IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MATHEW R. WURM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-CV-2322-HLT-ADM |
| | ) |
| FORD MOTOR COMPANY, | ) |
| | ) |
| Defendant. | ) |

PLAINTIFF'S RESPONSE TO DEFENDANT FORD'S (DAUBERT)
MOTION TO EXCLUDE THE EXPERT TESTIMON OF PLAINTIFF'S
EXPERT WITNESS DAVID R. MCLELLAN

Plaintiff retained the services of David R. McLellan to testify on his behalf to provide expert witness mechanical engineering testimony about the automobile product and manufacturing design testimony pertaining to safe product design/crashworthiness of the subject 1999 Ford F-250 Super Cab's roof structure when it failed and intruded into the occupant cabin space during a rollover event in Osage County Kansas on June 18, 2016 which resulted in injuries to all three of the rear seat passengers, one of which was the Plaintiff. In addition, David McLellan is to testify to the dangerous condition of the product as it exists on the roadway today and existed prior to the rollover event in 2016, for which the manufacturer Ford Motor Company had knowledge of its propensity to cause serious injury or death. Plaintiff respectfully submits to the Court that this roof failure is catastrophic, that the defendant had actual knowledge and 2005 in an Exponent Roof Crush Test privately secured by a party other than Ford Motor Company of its weak

1

roof for a excessively heavy vehicle for which rear seat passengers in this particular product were designed to ride in and which was a popular feature at the time of its manufacture in 1999. Interestingly enough, Defendant's engineering expert Michelle M. Vogler in this case FMVSS 216 applies in a general sense and that even though the vehicle is not under 6000 pounds that vehicles under 6000 pounds are required to have roof intrusion in a rollover or accident scenario of no more than five (5) inches. As previously noted and provided in the response to Defendant's Motion to Exclude the testimony of Plaintiff's pattern of injury expert Shawn Parcells, the vehicle's roof crush was 18 inches. Attached and marked as Exhibit "A" are the photographs of the vehicle depicting this catastrophic failure (McLellan Exhibits 27 and 28). Also a series of photographs of the vehicle and one of the scene of the accident are depicted in Parcells Response to Defendant's Motion to Exclude/Parcells at Exhibit "F". Because of the catastrophic nature of the failure the Plaintiff attaches hereto and marked as Exhibit "B" in a similar rollover event alleging roof and latch assembly failure that expert testimony may not be needed, where the U..S Magistrate Judge District of Maine, Margaret J. Kravchuck recommended in Taylor v. Ford Motor Company, Case Civ. No. 06-69-B-W:

> "The first waypoint concerns design utility. The record is presently silent on the question of what Utility the Super Cab design offers consumers. Because the Court must draw inferences in favor of Taylor in the context of the summary judgment contest, I conclude that the factfinder might fairly regard the Super Cab design as offering no real utility to a passenger or, at best, only a negligible amount of convenience when it comes to entering and exiting the rear area of the passenger compartment." and;

> "The next waypoint is risk. The record would seem to reflect that there is an inherent risk in the transition from a fixed B-pillar to a floating B-pillar. Additionally, the record reflects that there is an appreciable risk in this particular

2

floating B-pillar configuration by virtue of the D5 latch used to secure the floating B-pillar to the roof rail. The factfinder might fairly conclude that the D5 latch is a relatively small and weak latch to rely on to secure the floating B-pillar to the roof rail, the very portion of the roof system likely to impact the ground during a rollover event."

As noted by Plaintiff's pattern of injury expert Shawn Parcells in his

Response to the Defendant's Motion to Exclude his testimony:

"Rollover injuries in the scientific literature are the outcome of the inability of a vehicle's crashworthiness design, or lack thereof, to protect its occupants during a rollover crash. Attached is a 2007 Australian treatise entitled "Diving verses roof intrusion: a review of rollover injury causation", Young, Grzebieta, McIntosh, Bambach and Frecheda, IJCrash 2007 Vol.12 No. 6. The paper presented and analyzed "two apparently conflicting views of injury causation for contained occupants in rollovers that had been presented and research literature to date: diving verses roof intrusion, more commonly known as the diving mechanism of injury; and is attached hereto and marked Exhibit "A". Both the Plaintiff and the Defendant obviously take the differing view because roof intrusion is a product failure and diving as a result of an unbelted occupant in the vehicle during a rollover event is not. Six (6) of the conclusions of this treatise at Paragraphs 4, 6, 7, 9, 10 and 11 favor the Plaintiff's causation theory of roof intrusion:

"4.     The amount of roof intrusion for a particular impact severity depends on the roof strength. In other words, for the same severity of roof-to-ground impact, the degree of roof intrusion varies from one vehicle to the next because of their different roof strengths.

6.     Occupants and vehicles with weaker roughs experienced higher severity injuries than those and strengthened roof vehicles. Results show that the most injurious events in the Malibu II test series are those where the roof structure was not strengthened.

7.     Torso augmentation due to a "diving" mechanism does produce neck loading that these loads were found to be significantly lower than the loading required to produce serious neck injuries.

9.     Proximity of the occupant's head to high-speed roof deformation due to intrusion of a vehicle's roof structure, be it from buckling or otherwise, increases the danger of severe neck injuries.

10.    There is a direct causal link between roof intrusion velocity and neck injury.

11.    Maintaining adequate survival space and adherence to DeHaven's original crashworthiness principles [28] appears to be the key process in reducing injuries during rollover crashes.

3

In the Deposition of David McLellan taken by the Defendant he further agreed with the Australian research within the 2007 Industry Abstract "Rollover Crashworthiness the Final Frontier for by Vehicle Passive Safety", attached hereto and marked Exhibit "C" the recommendations/observations in part:

> 4.   In the case of a weak roof that can readily deform, the vertical intrusion velocity is directly related to the velocity of the lateral displacement of the roof and/or roof pillars. This deformation is in turn directly related to the velocity at which roof touchdown occurs with the ground surface which is directly related to the speed at which the vehicle's COG is moving laterally;
> 5    If the vehicle roof is weak, the higher the lateral traveling velocity of the vehicles COG, the higher the speed of vertical intrusion and hence the greater the severity of injury to the occupants.

Mr. McLellan, a former Chief Engineer for General Motors – Corvette and having been responsible for ultimate responsibility for product development, product compliance to include mandatory sled testing of passenger restraint and airbag (SRS) systems designed for safe use required by the National Highway Traffic Safety Administration's (NHTSA)/Federal Motor Safety Vehicle Safety Standards (FMVSS) minimum federal standards/ requirements for automotive product safety, the higher safety rating performance standards of the Automotive Industry's Five Star Safety rating system ; and product safety development in the automobile manufacturing industry for the Corvette automobile.

David R. McLellan, BSME is expected to testify as a result of his investigation, that his professional opinion as an automotive engineer and former chief engineer for GM Corvette again reached are based upon his investigation of the principles of force, energy

4

and motion; and opining that the design of the 1999 Ford F-250 Super Cab roof structure was unsafe and dangerous to life and limb for rear passenger occupants of the vehicle, and that at a minimum Ford Motor Company should have either recalled or issued a warning sufficient to alert the consent of the weak roof to the 1999 Ford F-250 Super Cab danger in rollover events.  See attached 2005 Exponent Failure Analysis and Horizontal Platen Roof Crush Test attached hereto and marked as Exhibit "D" reproducing the catastrophic failure of the roof that would occur in a rollover as it occurred in this case as early as 2005 and no later than 2007 when NHTSA advanced its 49 CFR  Federal Motor Vehicle Safety Standard (FMVSS 216 Standard; roof crush resistance; phase and reporting requirements) increasing roof strength requirements requiring roof crush resistance to be increased significantly and to which Ford was a participant in this rulemaking process. Plaintiff directs the Court's attention to the Expert Report of Michelle M. Vogler, PhD, PE filed herein by the Defendant, in part:

> "FMVSS 216 is a reasonable standard, and evaluating roof performance through an assessment of how the assembled structure manages the subjected FMVSS 216 loading conditions is an accepted, valid and appropriate design technique. FMVSS 216 test results are regularly and routinely relied on by NHTSA and other researchers as an assessment of vehicle roof strength."

Mr. Dave McLellan comes highly credentialed in the field of automotive design and manufacturing and has the designation as a "Fellow in the Society of Automobile Engineers" which comprises approximately 200 individuals out of a total membership of 135,000 professional engineers.  He has further achieved the coveted "Henry Award" from his alma mater Wayne State University in 2014. Mister McLellan's opinions are valued in the automotive industry. His familiarity with the professional requirements

5

required by active membership in the Society of Automotive Engineers (SAE); and based upon the peer-reviewed SAE Technical Papers.

In his evaluation of this case "real-world data" is critical and is most essential as a methodology of industry choice where the factors surrounding the product failure can be to a large extent allow conclusions without "laboratory testing" and professional inferences sufficient to form reasonable opinions based upon engineering and product design certainty, that the unique features of the incident where the rear seat passengers to the 1999 Ford F-250 Super Cab both exposed and experiencing certain levels of load and forces within the principles of kinematic energy principles to form reasonable conclusions as to the cause of the product failure of the vehicle's roof and roof crush that impacted the back seat passengers not by their "diving" but rather of their bodies coming in contact with the roof crush added excessively dangerous level. Plaintiff attaches hereto and marks as Exhibits ""E" and "F" examples of warnings that should have been issued out to the public including him to be aware of the latent danger to the vehicle's weak roof and its propensity to catastrophic collapsing in a rollover event. Ford's conduct as alleged by the plaintiff to be one and that the jury should be entitled to consider awarding punitive damages against Ford Motor Company on the facts of this case.

## Dave McLellan's Expert Witness Credentials

Dave McLellan attaches the following marked exhibits: Exhibit "G"- Cases testifying as an Expert; Exhibit "H"-Declaration Wurm v. Ford; Exhibit "I"- Resume.

## Dave McLellan's Expert Witness Report/ Supplemental Report

Plaintiff attaches in their entirety the "Preliminary Expert Report of David R. McLellan, dated June 21, 2019 and marked Exhibit "J"; and the "Supplemental Preliminary Expert Report of David R. McLellan, dated July 10, 2019" and marked Exhibit "K"). Attached and marked as Exhibit "L" is an excerpt from the Deposition taken on August 16, 2019 of David McLellan when asked what was the sum total of his conclusions and opinions in this case wherein David McLellan noting in part when asked:

Q. "[a]nd if I asked you to share with me, and in an unabridged form, the sum total of your conclusions or your opinions in this case---

A. "it's in the report(s). You have a copy of the report?

## Plaintiffs' Factual Daubert Statement

Mr. McLellan the discusses methodology of his reports and the use of learned treatises in the field of mechanical engineering in automotive manufacturing to support his opinions as being reliable and accepted within the field of mechanical engineering in automotive manufacturing . His opinions and conclusions concerning "roof crush" as opposed to "diving" are based upon his personal findings, photographs, measurements and notes taken by him in the investigation of the accident; the facts surrounding the accident taken from the Accident Report , Emergency Medical Response and Hospital Medical Records,  the professional literature in automotive engineering and design, and the findings of Plaintiff's expert in forensic anatomy and epidemiology, Mr. Shawn L. Parcells, BS, MSHAPI, PA, pertaining to medical causation of  Plaintiff's injury pattern

7

he sustained from roof crush, and not from "diving" in the rollover event as opined by Defendant's Experts.

## Plaintiffs' Statement of Applicable Law

The Court in its gatekeeping function, independent of any motions filed by the parties is obligated to conduct a Daubert inquiry where expert testimony is proffered. See *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1171 (1999). The Court also may adopt it whatever procedures it feels is necessary to determine by conducting Hearings in its discretion, or to utilize any other method to perform its gatekeeping function required pursuant to Fed. R. Evid. 701. [Advisory Committee Notes to Rule 701.]

And, generally the District Court should focus on the expert's methodology rather than the conclusions that they generate. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Plaintiffs in review of the recent Tenth Circuit Court of Appeals Decision in *Taber v. Allied Waste Systems, Inc.*, just decided February 25, 2016 (2016 W.L. 737328) notes:

> "Here, the Tabers do not argue the district court failed to perform its gatekeeping role or to support its conclusions with adequate findings. Accordingly, our review is confined to whether the district court abused its "wide latitude" of discretion in excluding the Tabers' experts. *Id.* In performing a *Daubert* analysis, "the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R. Evid. 702). If the expert is sufficiently qualified, the

district court must then consider whether the expert's opinion is both relevant and reliable. *Daubert*, 509 U.S. at 589."

Plaintiffs further show the court that if the expert is not qualified to testify in the relevant field (here ladder design), that the expert should not be permitted to testify to matters in the "relevant field" of ladder design. Also, in *Bitler v. A.O. Smith Corp.*, 400 F. 3d 1227 (10th Cir. 2004), the Court in *Tabor*, supra notes:

"In *Bitler*, we refer to this process of eliminating causes to arrive at the most likely as "reasoning to the best inference", and we analogized the process to the medical practice of "differential diagnosis." 400 F. 3d at 1237. In taking this approach, the expert must first identify" some independent evidence that the cause identified is of the type that could have been the cause. *Id.* The expert must then "eliminate other possible sources is highly improbable and must demonstrate the cause identified is highly probable. at 1238.

Plaintiffs show that holding a medical degree in and of itself, nor antithesis, in and of itself, and standing alone will not to the enough to withstand a Daubert challenge. See *Ralston v. Smith & Nephew Richards, Inc.*, 275 Fed. 3d 965 (10th Cir. 2001):

"While this court has not had the occasion to discuss… The district courts in this Circuit have held after *Wheeler* and *Compton*, and we agree, that merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue. See *Alexander v. Smith & Nephew*, 98. F. Supp. 2d 1310, 135 (N.D. Ok. 2000) ("[t]he simple possession of a medical degree is insufficient to qualify a position to testify as to the advantage of a spinal fixation device, the medical causation of spine related ailments, or the mechanical functioning of an orthopedic implantation device," and see n.2, supra; see also United States Surgical Corp. v. Orris, Inc., 983 F. Supp. 963, 967 (D. Kan. 1997)."

The most current case on Daubert at the state level and applying federal law standards is *Smart v. BNSF Railway Co.*, (2016 W.L. 852135) decided by the Kansas Court of Appeals on March 4, 2016 and Headnotes 7-9 provide:

9

7. K.S.A. 2015 Supp. 60-456(b) requires the district court to make two fundamental decisions: (1) whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion; and (2) whether the proposed expert testimony is reliable and relevant, in that it will assist the trier of fact.

8. Under Daubert, the district court determines the reliability of proposed scientific testimony by looking to factors such as: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance.

9. To the extent an expert witness is relying primarily on experience rather than on scientific methodology, he or she must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.

## Conclusion

**WHEREFORE,** Plaintiff respectfully requests this Court to enter an Order denying the Defendant's Motion "Ford Motor Company's Motion to Exclude the Expert Testimony of Plaintiff's Expert Witness Dave McLellan on the basis that his training and engineering experience on the product and roof crush issues versus defendant's theory of "diving" before the Court are consistent with the issues before the Court, which requires testimony based upon knowledge, experience and training to provide guidance to the jury on the issue of pattern of injury which is in dispute and, as here shown the opinions will assist the jury in determining causation as to the determinative issue before the Court, were the plaintiff's injuries incurred in this rollover event more likely than not caused by roof crush or "diving". And further with his selected recognized automotive and engineering literature whose authorities that are

10

germane and peer-reviewed, that the court consider the fact that this individual is recognized by his peers and national awards and recognition in the field of design and safety is knowledgeable concerning the FMVSS 216 and its utility and limitations in the automotive industry for which he has been engaged for so many years, culminating as a chief engineer for GM Corvette.

Respectfully submitted,

s/Eric Kjorlie
ERIC KJORLIE, #08065
Historic Tinkham Veale Place
827 SW Topeka Blvd.
Topeka, Kansas 66612-1608
785.232.6868 (O) 785.232.6878 (F)
Email: kjorlielaw@sbcglobal.net
*Attorney for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of February, 2020, I electronically transmitted the attached document "Plaintiff's Response to Exclude Dave McLellan as described with Attachment to the Clerk of Court by using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Sherry Rozell
MCAFEE & TAFT
Two West 2nd Street, Ste. 1100
Tulsa, OK 74103
(918) 574-3001 direct
(918) 574-3101 fax
(417) 840-7990 cell
sherry.rozell@mcafeetaft.com

Steve Ward
MCAFEE & TAFT
4050 S. Fairview Avenue
Springfield, MO 65807
(417) 409-6090 direct
(417) 409-6055 fax
(417) 830-1866 cell
steve.ward@mcafeetaft.com


Paul Malek
Huie, Fernambucq & Stewart, LLP
2801 Highway 280 S
Suite 200
Birmingham, AL 35223
Direct: (205) 297-8850
Mobile: (205) 492-8850
pmalek@huielaw.com

Attorneys for Ford

s/Eric Kjorlie<br>
ERIC KJORLIE, #08065