# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MATHEW R. WURM,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　)　　Case No. 2:18-CV-2322-HLT-ADM
　　　　　　　　　　　　　　　　　　)
FORD MOTOR COMPANY,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　)

## PLAINTIFF'S RESPONSE TO DEFENDANT'S SPOILAGE/SANCTIONS MOTION

Plaintiff respectfully shows the Court that Defendant Ford Motor Company's Motion for Sanctions (Doc.74) and Defendant Ford Motor Company's Motion for Spoilage (Doc.74) are both intertwined and connected; and that a singular Response thereto should resolve both of this Motion for determination.

### Plaintiff's Overview/Statement of Facts Concerning the Issue of Spoilage/ Defendant's Request for Imposition of Sanctions

Plaintiff Matthew R. Wurm, age 17 at the time of the accident,  had no possessory interest to the 1999 Ford F-250 Super Cab Pickup Truck that was owned by Nathan Gerisch and who was the driver of the vehicle on June 18, 2016 in Osage County Kansas. As to the averment of the Defendant that the Plaintiff had a duty to preserve subject vehicle, it is admitted that his attorney Eric Kjorlie made contact with the Insured's Carrier Farm Bureau Financial Services by correspondence to its representative, a Mr. Reed Wilson, AIC on July 13, 2016. Attached and marked as Exhibit "A".  During this

1

period of time the vehicle was stored by the Carrier however the Plaintiff was still

recovering from his injuries and was uncertain as to whether or not he had any permanent

serious injury to contend with for the rest of his life and even in the Fall of 2016 he

attempted to go out for the wrestling team at his High School and he even couldn't

perform the duties as his high school mascot for the football team. See attached and

marked as Exhibit "B". As shown in the attached and marked Exhibit "C" on July 6,

2016 the owner of the subject vehicle was the driver's brother a Nathan Gerisch who

picked up his brothers wallet, and also two of the rear seat passengers Britney Kerley and

William Pagan picked up and receipted for their personal items from the Overbrook

Osage towing company where the vehicle was stored on that date; that said Nathan

Gerisch assigned the title to Farm Bureau insurance on May 23, 2017; and subsequently

on June 14, 2017 the vehicle was purchased from IAA Insurance Auction and scrapped to

Midwest Scrap Company in Kansas City Missouri which crushed the truck on June 30,

2017. Prior to the time of June 30, 2017 the Plaintiff had not resolved his claims of

liability against the authorized driver/owner of the vehicle which was done accomplished

in December 2017/January 2018. Upon review of the Report of Mr. Shawn Parcells the

family and Plaintiff decided to pursue a possible products case against Ford Motor

Company and authorized Plaintiff's Counsel to have the case reviewed by automotive

engineer Dave McLellan and which was done on April 20, 2018, as shown in the attached

E-mail memo and marked Exhibit "E".

Plaintiff's father Matthew Wurm, Sr. took the sequential photographs of both of the accident scene as well as the exterior and interior of the damaged vehicle. His exterior and interior photographs and dates were provided Defendant's Counsel in Discovery:

> "No tests were performed as vehicle was unavailable and apparently scrapped and could not be located. (Plaintiff's Father Matt Wurm, Sr. took sequential photographs of the accident scene the evening of 6/18/16, a Saturday; took photographs of the damaged vehicle on Monday 6/20/16, and later on 8/25/18 of the south berm at the accident site for which you have been provided all photographs and dates may be confirmed on his iPhone. -**Ward Attachment- 2**."

As shown in the attached and marked Exhibit "F" are a sequence of interior photographs of the vehicle and there are no indications of any blood spattering's within the vehicle of photographs taken on June 20, 2016, two days after the accident, however there is aa indication where the head of the rear seat occupant William Pagan received a significant scalp wound to the back of his head consistent with a roof crush pattern of injury (See the attached and marked Exhibit "D").  Further attached and marked as Exhibit "G" is the salvage company's photographs that may pertain as an attributable blood smear to the head wound of William Pagan circled in red. (Plaintiff's assertion that pattern of injury is consistent with "roof crush" as opposed to "diving" championed by the Defendant.)

## Comments of Defendant's Experts

Defendant's Expert Michelle M. Vogler, PhD, PE states in part:

"I have reviewed the accident reconstruction analysis of Dr. Daniel Toomey, and it is my understanding that the subject F-250 departed from the south side of the roadway, traveled up an off-road embankment, and struck a telephone pole. During that engagement, the pole broke off and engaged with the roof of the F-250 pickup as it continued on to pirouette on its front end and overturn driver's side leading. The F-250 then impacted the roadway on its left side and continued overturning across the roadway, coming to rest on its wheels on the north side of the road...

"The subject 1999 Ford F-250 Super Duty Super Cab 7.3L 8-Cyl diesel engine 4x4 pickup was not available for inspection[2], so photographs were analyzed to assess the condition of its roof structure and ascertain its performance associated with the loading conditions."

[2] Had I been able to inspect the vehicle, I would have performed a 3D scan of the vehicle exterior and interior to assess deformation in regions not sufficiently photo-documented to allow a photogrammetric analysis. I would have also further documented the roof scratch pattern positions and angles, along with locations of focused contact damage. Lastly, I would have also assessed the condition of the approximately 17 year old vehicle, looking for the presence of pre-accident damage and/or modifications."

Dr. Vogler also notes:

"An evaluation was undertaken determine if sufficient photo documentation existed for establishing the extent of roof fractured deformation present and post-crash photographs of the subject F – 250 through the use of a multi-view photo-grammerty process. The limited views and lack of undamaged reference points precluded such an analysis. The extent of deformation, therefore, can only be qualitatively assessed..."

Plaintiff your notes that Ford's Expert Dr. Toomey's report and diagram (below) indicates a time when the vehicle landed on its roof (consistent with and an impact damage showing catastrophic collapse roof in the 2005 in Exponent Roof Crush Test the Jury for the Jury as factfinder to determine whether or not Ford's claim that the telephone poll contact resulted in the roof crush as opposed to the vehicle slamming into the surface of the gravel road as of the causative factor of the catastrophic roof crush shown in all photographs.

TOOMEY REPORT (September 6, 2019)



Wurm, Matthew v. Ford    Crash: 6-18-2016 in Osage County, KS
Site Inspection: 7-10-2019

Plaintiff further shows that Defendant Ford's biomechanics Expert Dr. Raphael

notes in her Report dated September 6, 2019:

> "Although I am still able to analyze the available evidence (i.e. photographs
> of the vehicle, along with medical records, radiographs, etc.), my analysis would
> be more precise had I been able to inspect the subject vehicle."

Plaintiff's response concerning Doctor Raphael's 's point is that there was

no blood smears inside the vehicle as testified by the father of the Plaintiff at the time of

the taking of photographs two (2) days after the event and again as shown Unfortunately

as attached are shown in the photographs at Photograph No. 12 the lighting darkened

that view that was taken which would have been in the roof area for which the Plaintiff

and the middle rear seat passenger Britney Kerley would have been in harm's way at the time the vehicle landed on its roof (consistent with and an impact damage showing catastrophic collapse roof in the 2005 in Exponent Roof Crush Test the Jury for the Jury as factfinder to determine whether or not Ford's claim that the telephone poll contact resulted in the roof crush as opposed to the vehicle slamming into the surface of the gravel road as shown below by another of Ford's Experts, Dr. Toomey in his diagram to his Report).

## Applicable Law

Plaintiff having no ownership interest in the subject vehicle; suffering an injury that would possibly be one that would be resolvable with time but unfortunately in this case has not; evincing no malice or deception, that his Father's taking precautionary photographs of the vehicle and accident scene on his own volition and for the purpose of protecting his son's rights should there be a need for litigation yet to be determined; and otherwise set up preserving the vehicle in any other method which was not easily or readily determined to be available to him as per the Defendant's suggestions as to imposition of sanctions and allege it bad faith; and the fact that there is been no showing of prejudice to Defendant Ford in this case to for it to defend against the allegations of product failure on the basis of its theory of diving as opposed to roof crush negates a finding of bad faith or a need for imposition of sanctions.

The Plaintiff further shows the Court that based upon the foregoing facts there has been no prejudice shown to this Defendant under the circumstances arising out of this

6

litigation; any evidence of evincing a bad faith motive; or any violation of a direct or

indirect order of this Court. The 10th circuit Court of Appeals has adopted the rationale

of *Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991). As determined in Auto-Owners

Insurance Company v. Summit Park Townhome Association, No.16-1352, the 10th

Circuit Court of Appeals in applying *Chambers* notes:

> "...*Chambers* does not require consideration of Rule 11 before a Court can use its inherent powers. *Chambers* states that "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." 501 U.S. 32, 50 (1991). Thus, *Chambers* does not require the district court to consider Rule 11 sanctions before invoking the court's inherent powers. See *Courtesy Inns, Ltd. v. Bank of Santa Fe,* 40 F.3d 1084, 1089 (10th Cir. 1994) (stating that *Chambers* rejected arguments that "the various sanctioning provisions of the federal rules reflect legislative intent to displace the court's inherent powers"); accord *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.,* 2 F.3d 1397, 1407(5th Cir. 1993) ("In Chambers . . . the Court held that the inherent power to impose sanctions for bad-faith conduct during litigation was not displaced by, and went beyond, such sanctioning mechanisms as Rule 11 and 28 U.S.C. § 1927.")."

### Conclusion

Neither the Plaintiff nor his Counsel Eric Kjorlie should not on the facts presented

to this Court by the Defendant on the issues it raises concerning bad faith as a matter of

law be sanctioned under the authority of *Chambers,* nor has it shown a sufficient basis

on the facts of this Record for the Court, in the exercise of its sound discretion, to grant

Defendant's Motions to any of its sanctions/spoilage claims.

Respectfully submitted,


s/Eric Kjorlie
ERIC KJORLIE, #08065
Historic Tinkham Veale Place
827 SW Topeka Blvd.
Topeka, Kansas 66612-1608
785.232.6868 (O) 785.232.6878 (F)
Email: kjorlielaw@sbcglobal.net
*Attorney for the Plaintiff*


# CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of February, 2020, I electronically transmitted the attached document "Plaintiff's Response to Defendant's Spoilage/ Sanctions Motions with Attachments Exhibit "A" through Exhibit "H" to the Clerk of Court by using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:


Sherry Rozell
MCAFEE & TAFT
Two West 2nd Street, Ste. 1100
Tulsa, OK 74103
(918) 574-3001 direct
(918) 574-3101 fax
(417) 840-7990 cell
sherry.rozell@mcafeetaft.com

Steve Ward
MCAFEE & TAFT
4050 S. Fairview Avenue
Springfield, MO 65807
(417) 409-6090 direct
(417) 409-6055 fax
(417) 830-1866 cell

steve.ward@mcafeetaft.com

Paul Malek
Huie, Fernambucq & Stewart, LLP
2801 Highway 280 S
Suite 200
Birmingham, AL 35223
Direct: (205) 297-8850
Mobile: (205) 492-8850
pmalek@huielaw.com

Attorneys for Ford

s/Eric Kjorlie
ERIC KJORLIE, #08065