IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MATHEW R. WURM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-CV-2322-HLT-ADM |
| | ) |
| FORD MOTOR COMPANY, | ) |
| | ) |
| Defendant. | ) |

PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR NEW TRIAL, ALTERING AND AMENDING THE COURT'S MEMORANDUM AND ORDER (Doc. 101) GRANTING DEFENDANT'S "NON-DISPOSITIVE" MOTIONS EXCLUDING THE TESTIMONY OF PLAINTIFF'S EXPERTS PARCELLS (Doc. 68) AND MCLELLAN (Doc. 72)

**COMES NOW** the Plaintiff, by and through his Counsel Eric Kjorlie, and respectfully moves the Court for an Order granting his Fed. R. Civ. P. 59(a)(1)(2) and (e) Motion for New Trial and to Alter, Set Aside, or Amend the Court's Summary Judgement entitled "Memorandum and Order" (Doc. 101), simultaneously entered on April 1, 2020; and as noted by the Court the Defendant's Daubert Motions Parcells (Doc. 68) and McLellan (Doc. 72) which were subsumed therein and critical to obviating Defendant's Motion for Summary Judgment in this products liability litigation.

Plaintiff requests the Court grant him an opportunity at oral argument on this instant Motion to present an opportunity for him to provide the Court based upon the

1

following submissions and exhibits an opportunity for the Court to again review and determine any sufficient ground to the Court's satisfaction for the Court to set aside and to reconsider Plaintiff's entitlement to his relief sought in his instant Motion upon the Court's finding of the that reconsideration and review is necessary to be convinced that of the existence of clear error of its factual determinations may require the Court to again carefully analyze  and determine whether or not <u>the need to correct clear error or to prevent manifest injustice  may exist</u> on the Record in determining whether or not it is proper to  grant Plaintiff's instant Motion, in whole or part.

## Plaintiff's Statement of the Case

### Plaintiff's Statement of Issues on their Motion for Reconsideration/New Trial

I.  Because Defendant's Motions to Exclude Plaintiff's Expert Testimony/ "Daubert" of Plaintiff's Designated Experts Parcells (Doc. 68) and McLellan (Doc.72) in actually attacking the sufficiency of the evidence supporting their opinions and not whether the evidence on which the experts relied was admissible the Plaintiff presents information for the Court's further review of their competency to provide certain opinion testimony concerning "pattern of injury" to support roof crush injury to the Plaintiff (Parcells) as a Anatomist and not required in his forming opinions of injury causation by being a member of an engineering biomechanics/occupant kinematics specialist; or opinions of unsafe design of the subject roof structure of the Defendant's truck for its rear seat occupants or its failure to comply with the minimum  Federal Motor Vehicle Safety Standard (FMVSS) 216 (5 inches as opposed to 15-18 inches of roof crush present after vehicle rollover) rendering the roof structure of the truck unsafe and dangerous (McLellan).

## Plaintiff's Factual Statement/Documents of Facts re: Issue I./ Plaintiff's Motion for Reconsideration/New Trial

1. A copy attached hereto marked Plaintiff's Rule 59 Motion Exhibit "A" comprises Mr. Parcells Student Official Transcript/Masters in Science and Human Anatomy and Physiology.

2. A copy attached hereto marked Plaintiff's Rule 59 Motion Exhibit "B" comprising of exhibits/materials concerning Mr. Parcells education and training in the field of human anatomy and physiology/including recognition of forensic science expertise in the field of pattern of injury and other matters concerning human anatomical form and function.

3. A copy attached hereto marked Plaintiff's Rule 59 Motion Exhibit "C" comprises materials concerning state litigation referred to by the court in its footnote contained within the decision and Order of the Court on April 1, 2020 (Doc.101, at Page 9)

4. A copy attached hereto marked Plaintiff's Rule 59 Motion Exhibit "D" comprises materials concerning Dave McLellan's reports and opinions within his reports and supplemental reports along with the trucks roof centerline section showing the location of the roof structure's centerline failure.

5. A copy attached hereto marked Plaintiff's Rule 59 Motion Exhibit "E" comprising the summary of *Hinkle v. Ford Motor Company*/Catherine Corrigan's a medical engineering/mechanical engineering/bioengineering expert concerning likelihood of seatbelt being worn under the arm with no pattern of injury to indicate "seatbelt sign bruising-pattern of injury" to the occupant.

6. A copy attached hereto marked Plaintiff's Rule 59 Motion Exhibit "F" comprising *"Stunning Drop in Federal Plaintiffs' Win Rate"* Article.

7. A copy attached hereto marked Plaintiff's Rule 59 Motion Exhibit "G" comprising a copy of "Expert Witness Jury Instruction" PIK 4th 102.50".

## Standard of Review

The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.' Instead the rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e). *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). Fed. R. Civ. P. 59(e) will govern when the motion for reconsideration is filed no later than 28 days after the entry of judgment.

A motion for amendment under Rule 59(e) is limited to a narrow set of circumstances: it "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law… It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012(10th Cir. 2000) (citing *Van Skiver*, 952 F. 2d at 1243) "Grounds warranting a motion to reconsider, include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) <u>the need to correct clear error or to prevent manifest injustice</u>. "(citing *Brumark Corp. v. Samson Resources Corp.* 57 F. 3d 941, 948 (10th Cir. 1995)). (Emphasis supplied.) The same standard has been applied to both Rule 59(e) motions, see id.; *Schlussler-Womak v. Chickasaw Tech Prod.*, 116 Fed. Appx. 772,773 (10th Cir. 2004) (unpublished), and Rule 60(b) motions, see *Lyons v. Dept. of Corr.*, 12 Fed. Appx. 772,773 (10th Cir. 20010 (unpublished); *Adams v. Anderson*, 12 Fed. Appx. 910, 914 (10th Cir. N2001) (unpublished).

In *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, (10th Cir. 2007), "<u>[A] n abuse of discretion occurs when the District Court makes a clear error of judgment or exceeds the bounds of permissible choice in the circumstances. This occurs when a</u>

4

<u>district court relies upon an erroneous conclusion of law, or upon clearly erroneous submits findings of fact.</u>" (Emphasis supplied.) However, Plaintiff here respectfully prays that the Court in further review and evaluation of its rulings may determine that its rulings upon Defendant's Daubert Motions Parcells (Doc. 68) and Defendant's Daubert Motions McLellan (Doc. 72) should be carefully reviewed and reconsidered upon Plaintiff's instant showing that the Plaintiff should be permitted to proceed within the confines of his expert's/Parcells' "pattern of injury" testimony; and further whether or not the Defendant had knowledge of the dangerous unsafe condition of the truck's roof, and that it failed to comply with either the federal safety standards, provide adequate warnings, or in the opinion of Plaintiff's engineering expert McLellan that the failure of the roof was both catastrophic and its design and function should not have been allowed to be permitted within the automobile industry as a safe consumer product in the event of a rollover occurrence. Further, Plaintiff prays that the Court determine that it's noted concern over whether or not Plaintiff's engineering expert conducted experimental rollover events would be economically prohibited to field testing and as such would be an unrealistic expectation for litigants complaining of roof crush injury during a rollover event due to the unsafe product design of the Defendant's truck's roof.

### Plaintiff's Statement of Applicable Law

Plaintiff respectfully shows the court that "pattern of injury" should be considered to be approved by the Court to be viable method of proof as to mechanics of injury due to the products failure in this instant case. *Cummings v. General Motors Corporation*, 365 F.

3d 944 (10th Cir. 2004) is a case supportive of pattern of injury where a mispositioned seat defense resulted in a pattern of injury showing resulting in a front seat passenger's back compression fracture resulting in paraplegia which was consistent with Defendant General Motors Corporation's theory of causation. And surprisingly the Plaintiff draws the court's attention to an opinion provided by the Defendant in another products case concerning "pattern of injury" of an experienced "forensic" "biomechanics occupant kinematics" expert allowed to testify in the current case litigation. See A copy attached hereto for convenience of Court and Counsel marked Plaintiff's Rule 59 Motion Exhibit "E" the case summary of Ford's designated biomechanics expert Catherine Corrigan in *Hinkle v. Ford Motor Company*, No. 3:11–24–DCR, 2012 WL 5868899 (E.D. Ky. Nov. 20, 2012) the Trial Court for the District of Kentucky in dealing with the admissibility of testimony of Ford's Human Factors Expert, Catherine Corrigan the issue of Ford's pattern of injury defense (Seatbelt worn under the arm issue- without apparent "seatbelt sign") to the injured occupants body was determined to be of a relevant inquiry sufficient to withstand a Daubert challenge.

    The Plaintiff further shows the Court that if the expert is not qualified to testify in the relevant field (here ladder design), that the expert should obviously not be permitted to testify to matters in the "relevant field" of ladder design. [Plaintiff respectfully submits in arguendo that in the Tabor case had there been a "pattern of injury such as identifiable bruising to the injured person's body would be sufficient to show that the alleged defective ladder in design was the cause or result of the bruising injury absent this particular plaintiff's recollection as to how the injury occurred that the causation factor might have

allowed the case to go forward if such were shown.] Also, in *Bitler v. A.O. Smith Corp.*, 400 F. 3d 1227 (10th Cir. 2004), the Court in *Tabor*, supra notes:

> "In *Bitler*, we refer to this process of eliminating causes to arrive at the most likely as "reasoning to the best inference", and we analogized the process to the medical practice of "differential diagnosis." 400 F. 3d at 1237. In taking this approach, the expert must first identify" some independent evidence that the cause identified is of the type that could have been the cause. *Id.* The expert must then "eliminate other possible sources is highly improbable, and must demonstrate the cause identified is highly probable."*Id.* at 1238.

The Plaintiff respectfully suggests to the Court here that this is a possible proper methodology that the Court could consider using in this type of case where we are talking about "medical" or "anatomical" causation and its resultant "pattern of injury" and that by virtue of his education, training and experience that he should be permitted to opine "within a reasonable degree of scientific/anatomical certainty" his expert opinions which should be permitted by the Court to be received by the trier of fact (see Plaintiff's Rule 59 Motion Exhibit "A"; "B" and "C") and that the weight given to these opinions would properly be for the jury to determine and not by the Court. Plaintiff shows that holding a medical degree in and of itself, nor its antithesis, in and of itself, and standing alone will or should not to the enough to withstand a Daubert challenge. See *Ralston v. Smith & Nephew Richards, Inc.*, 275 Fed. 3d 965 (10th Cir. 2001):

> "While this court has not had the occasion to discuss… The district courts in this Circuit have held after *Wheeler* and *Compton*, and we agree, that merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue. See *Alexander v. Smith & Nephew*, 98. F. Supp. 2d 1310, 135 (N.D. Ok. 2000) ("[t]he simple possession of a medical degree is insufficient to qualify a position to testify as to the advantage of a spinal fixation device, the medical causation of spine related ailments, or the mechanical

7

functioning of an orthopedic implantation device," and see n.2, supra; see also United States Surgical Corp. v. Orris, Inc., 983 F. Supp. 963, 967 (D. Kan. 1997)."

One Daubert case at the state level and applying federal law standards is *Smart v. BNSF Railway Co.*, (2016 W.L. 852135) decided by the Kansas Court of Appeals on March 4, 2016 and headnotes 7-9 provide:

> "7.   K.S.A. 2015 Supp. 60-456(b) requires the district court to make two fundamental decisions: (1) whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion; and (2) whether the proposed expert testimony is reliable and relevant, in that it will assist the trier of fact.
>
> 8.   Under Daubert, the district court determines the reliability of proposed scientific testimony by looking to factors such as: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance.
>
> 9.   To the extent an expert witness is relying primarily on experience rather than on scientific methodology, he or she must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."

In this regard the Plaintiff further wishes to provide the Court with the State of Kansas "Expert Witness Jury Instruction" PIK 4th 102.50 to provide that an individual who may have an expertise in the field may not have the credentials of another who is permitted to testify but the jury in that circumstance must review the testimony and considerate as to what weight or credit the jury would allow based upon their community evaluation of its importance. A copy of "Expert Witness Jury Instruction" PIK 4th 102.50 attached hereto marked Plaintiff's Rule 59 Motion Exhibit "G".

### Discussion.

Plaintiff respectfully submits that his Rule 59 sought after relief is merited if upon careful review of the Record <u>the need to correct clear error or to prevent manifest injustice,</u> and in support thereof, the Plaintiff has provided the Court with additional material that he prays may well be considered by the Court in the Court's obligation to provide it full and careful consideration, and even careful reconsideration of matters that have previously been decided by the Court, and in so doing to provide its good-faith review and consideration of Daubert within the context of the instant Motion in its application to all the facts and their importance in the instant case. Finally, with the hope that this submission will not be considered either wrongheaded or mean-spirited Plaintiff's Counsel has provided a report studying a plaintiff's success rate in pursuing federal litigation in civil cases; and what may be factors/ possibly including the structural limitations of Daubert verses a juries fact-finding responsibilities in there weighing the value of expert testimony within the context of a case and what weight given, if any, as to the likelihood of the expert's testimony being appropriately weighed and considered by the jury on the facts of each individual case presented to the jury when given the green light to do so. See attached "Steady Drop in Federal Plaintiff's Win Rate is Complete Mystery-New Study" marked Plaintiff's Rule 59 Motion Exhibit "F".

### Conclusion

**WHEREFORE,** the Plaintiff respectfully requests this Court to enter an Order(s) consistent with the Plaintiff's relief sought in the instant Motion for the reasons, argument

and authority above addressed; and further if warranted by the Court in the exercise of its sound discretion to provide him the opportunity to address his sought after relief by permitting additional argument at hearing should the Court determine that such would be proper and just and of assistance to the Court in order to review and consider the matter further at evidentiary hearing.

                                      Respectfully submitted,

s/Eric Kjorlie
ERIC KJORLIE, #08065
Historic Tinkham Veale Place
827 SW Topeka Blvd.
Topeka, Kansas 66612-1608
785.232.6868 (O) 785.232.6586 (F)
Email: kjorlielaw@sbcglobal.net
Attorney for the Plaintiff

Sherry Rozell
MCAFEE & TAFT
Two West 2nd Street, Ste. 1100
Tulsa, OK 74103
(918) 574-3001 direct
(918) 574-3101 fax
(417) 840-7990 cell
sherry.rozell@mcafeetaft.com

Steve Ward
MCAFEE & TAFT
4050 S. Fairview Avenue
Springfield, MO 65807
(417) 409-6090 direct
(417) 409-6055 fax
(417) 830-1866 cell
steve.ward@mcafeetaft.com

Paul Malek
Huie, Fernambucq & Stewart, LLP
2801 Highway 280 S
Suite 200
Birmingham, AL 35223
Direct: (205) 297-8850
Mobile: (205) 492-8850
pmalek@huielaw.com

Attorneys for Ford

                                                  s/Eric Kjorlie
                                                  ERIC KJORLIE, #08065